## Baltimore & Ohio S. W. R. R. Co. v. Frank Greer.

1. RES IPSA LOQUITUR—*Requisites of Proof Where Rule Applies.*— Before the plaintiff can recover in a case where the rule *res ipsa loquitur* applies, he is required to prove some affirmative act or acts of negligence, by defendant, that was the proximate cause of the injury, or to prove that defendant had omitted to perform some duty that the law required of him, which omission was the proximate cause of the injury; until he has done that, defendant is under no obligation to prove anything.

2. RAILROADS—*Not Insurers of Employes.*—Railroad companies are not insurers of the lives and limbs of their employes while in their service any more than private individuals are. A brakeman of a railroad company assumes the risks and dangers incident to the business in which he is engaged, and while the company is bound to furnish suitable and safe machinery and appliances for his use, when this is done it is not responsible for an injury resulting from the breaking or failure of the machinery, unless it is shown that it has in some way or manner been guilty of negligence in regard thereto.

3. MASTER AND SERVANT—*Knowledge of Defects in Machinery Must be Brought Home to Master.*—If injury arises from a defect or insufficiency in the machinery or implements furnished to the servant by the master, knowledge of the defect or insufficiency must be brought home to the master or proof given that he was ignorant of the same through his own negligence or want of care, or, in other words, it must be shown that he either knew or ought to have known of the defects which caused the injury.

Trespass on the Case, for personal injuries. Appeal from the City Court of East St. Louis; the Hon. BENJAMIN R. BURROUGHS, Judge presiding. Heard in this court at the February term, 1902. Reversed. Opinion filed September 11, 1902.

Statement. — Appellee recovered a judgment against appellant, in the City Court of East St. Louis, for the sum

of $1,999 damages, in an action on the case for injuries received by him in the railroad yards of appellant, at the city of Springfield in this State, whereby his left arm was crushed so as to render amputation necessary, about two inches below the elbow; and it is claimed by appellee that his injury was caused by the negligence of appellant.

Appellee was in the employ of appellant as a switchman in its yards at Springfield.

The yards contain seven switch tracks that connect with the main tracks of the road. These switch tracks are numbered from 1 to 7 inclusive.

About four o'clock in the afternoon of November 11, 1899, a switching crew of which appellee was one, and whose duty it was to couple and uncouple cars, were at work in the yards shoving two cars in front of the front end of a locomotive, from a main track along switch track No. 5, for the purpose of coupling to and switching out, a car, standing on the switch track, seventy-five or eighty feet from the point where track No. 5 connects with the main or lead track. The switch track was level, and the locomotive and the two cars being shoved by it, moved slowly along the track, appellee riding on the side of the front car, and when within a few feet of the car to which the coupling was to be made, he got off the car on which he was riding and walked along ahead of it, going east, as he states, "faster than the engine was coming." The cars to be coupled were old, foreign cars, with link and pin couplers; the link was in the foremost car being shoved, and appellee in stating how he came to be injured, in his evidence as abstracted says:

"I laid my pin over in the eye of the other coupler, and when the car came up I reached out and took hold of it with my left hand, and with the other I reached under the buffer blocks—it was my left arm—and took hold of my link to enter it into the draw bar, when I saw the draw bar in the standing car start back under the car; of course my first impression was to get away as quick as possible, to keep from getting killed, and I started to get away; they clean their engines there and let their injectors open, and

the overflow pipe had washed great holes in the track, and my foot kind of stuck in one of them and threw me off my balance; I threw my arm up in between, and the draw bar giving way, let the buffer blocks come together; it held me there, it seemed to me, a long time, probably two minutes; * * * the draw bar went back until the head of the pin was clear up against the wood of the car; he reversed his engine and give it steam and pulled it back off of me before I had room to get out. My arm was caught between the buffer blocks, an iron square that is fastened on the end of the car, probably eight inches long and six inches square, about eight inches from the draw head. The draw heads on this car projected out beyond the buffers or bumpers from two to four inches. The draw head is a metal concern that fastens the cars together; it has two springs, two follower plates and two draft sills and a stem and key. The stem is a long rod that goes through and back under the car to the back that the springs and follower plates fit on. This spring is a large coil spring with a small spring inside of it. The stem runs through the coil springs, then there is a follower plate in front and one behind and a key behind the back follower plate in the stem. The faces of the draw bar come together first when you are making a coupling if the draw bar is properly constructed. The follower plates and springs keep the draw bar from going back under the car. The buffers or bumpers are put in in case the train breaks in two and the cars run together; or in case of rough handling of cars, with heavy loaded cars, they cut them off and kick them in on a track where there are other cars standing, and they come down probably eight or ten miles an hour, and the buffer blocks come together, they will spring apart again; the force of the springs will open them again. The buffer blocks are put in to save the springs and the follower plates to some extent. In coupling cars if the draw bars are in good order and the springs and follower plate in good condition, the buffers should stand from four to six inches apart, because the draw bars are from three to four inches longer than the buffer blocks. These are old cars that have been run a long time. In making a coupling onto an empty car with one or two cars attached to an engine, coupling onto another single car standing on a level track and no brakes being set and the draw bars in good condition, the heads of these draw bars would come together, but the buffers would not; the strength of the springs would keep them apart.

If two empty cars are coupled together and, after making the coupling, the buffers remain up against each other, the springs are either broken or the follower plates gone, because if they were not, the weight of the springs would throw them apart. There was no follower plates on that car that I was going to couple onto; had there been they would have sprung apart; he had to pull the slack off of them; if that draw bar had performed its ordinary and usual work, my arm would have been liberated from there; the springs and follower plates, if they were in proper condition and properly constructed, would have kept the buffer blocks from four to six inches apart; that would give me ample room for my arm; there was no follower plates in the car he came back against; there was nothing to spring the car away from me, consequently my arm remained fastened in there."

On cross-examination appellee testified as follows:

Q. "You did not see the follower plates at all, did you, with your eyes?" A. "No, sir."

Q. "You did not see whether they were there or not?" A. "No, sir."

Q. "You are telling the jury the follower plates were not there because the draw bar went back?" A. "That is the idea."

Q. "You did not see whether they were there or not?" A. "If they had been there, the draw bar could not have gone back."

Q. "You did not see whether they were there or not?" A. "No, sir; but I knew they were not there, because if they had been there the draw bar would not have gone back."

No other witness testified that there was any defect in the draw bar.

KRAMER, CREIGHTON & SHAEFFER, attorneys for appellant; EDWARD BARTON, of counsel.

F. C. SMITH and M. MILLARD, attorneys for appellee.

MR. PRESIDING JUSTICE BIGELOW delivered the opinion of the court.

The ground on which appellee seeks to recover is stated in his declaration as follows:

" That the defendant negligently had and allowed the draw bar of a freight car to be defective, out of repair and insufficient, by certain means whereof, while the plaintiff was then and there endeavoring to couple said car to another car, with due care and diligence, the said draw bar broke, gave way and pushed back, and in consequence thereof, the plaintiff's left arm was then and there caught between the buffers of said car and so crushed and injured that amputation of the same became necessary."

At the close of the evidence in the case, appellant's counsel moved the court to exclude the evidence from the jury, and to instruct the jury to find the defendant not guilty, but the motion was denied and the instruction refused, to which rulings of the court appellant severally excepted; thereupon appellant moved the court to arrest judgment on the verdict of the jury, which motion was denied and defendant excepted, and now assigns as error the several rulings of the court, with other errors which it will be unnecessary to notice.

It is apparent that appellee had no knowledge of any defect in the draw bar, and the pretended knowledge he had was mere conjecture, and of no value whatever as evidence. The entire case of the plaintiff seems to have been tried upon the theory that all he was required to establish by evidence, was the fact that he was injured while endeavoring to couple cars on appellant's railroad, and that is all he has established.  This is not a case where the rule, *res ipsa loquiter* applies, and before the plaintiff could recover, he was required to prove some affirmative act or acts of negligence, by appellant, that was the proximate cause of the injury, or to prove that appellant had omitted to perform some duty that the law required of it, which omission was the proximate cause of the injury; until he had done that, appellant was under no obligation to prove anything.   Sack v. Dolese et al., 137 Ill. 129.

Even if appellee had proven that the draw bar had become broken, which caused it to go back under the car, that would not of itself have been sufficient to base a recovery upon.   Railroad companies are not insurers of the lives

and limbs of their employes while in their service, any more than private individuals are. A brakeman of a railroad company assumes the risks and dangers incident to the business in which he is engaged, and while the company is bound to furnish suitable and safe machinery and appliances for his use, when this is done the company is not liable for an injury resulting from the breaking or failure of the machinery, unless it is shown that it has in some way or manner been guilty of negligence in regard thereto. De-Graff v. N. Y. C. & H. R. R. R. Co., 76 N. Y. (31 Sickles) 125.

The rule of law that applies to a brakeman applies equally to a switchman engaged in switching cars in a railroad yard.

The testimony of plaintiff's witnesses that in their opinion the reason the draw bar went back under the car and remained there was that the spring or springs of the draw bar were broken, or as some of them said were " weakened," was purely guessing and nothing else, and was not evidence at all, and the guessing was bad, as was shown by the evidence of the car repairer and his assistant, who inspected the draw bar a short time after the accident, and found it intact—no spring broken and no follower-plate broken or gone. The evidence of these witnesses is entirely uncontradicted and gives strong support to the theory of appellant's witnesses, that the bumpers of the cars came together because the cars were running on a curved track.

But if the plaintiff had proved that a defect in the draw bar caused the injury, that would not have been sufficient to entitle him to recover, for such a thing might well exist and appellant still be free from any negligence, if the defect was such that it could not have been discovered by a careful inspection of the draw bar; and the burden of proving that it might have been discovered by such an inspection, rested on the plaintiff. Sack v. Dolese et al., *supra.*

An examination of that case, as well as the case of De-Graff v. N. Y. C. & H. R. R. R. Co., above quoted, will dis-

close each to be a much stronger case for the plaintiff than the case we are considering, yet in the former case the court directed a verdict for the defendant, and in the latter case the court directed a non-suit, which is substantially the same as directing a verdict of not guilty. In the case of C. C. & I. C. Ry. Co. v. Troesch, 68 Ill. 545, in stating the duty of the master to furnish the servant with proper and sufficient machinery and implements, the court says:

"The cases in this state and sister states are, with great unanimity, to the effect, if injury arises from a defect or insufficiency in the machinery or implements furnished to the servant by the master, knowledge of the defect or insufficiency must be brought home to the master, or proof given that he was ignorant of the same through his own negligence or want of care, or, in other words, it must be shown he either knew or ought to have known, the defects which caused the injury."

Applying that rule to the facts in this case, wherein can it be said that appellant was negligent? The utmost that can be replied is, that appellant should have had the car inspected before attempting to couple to it. There might be some force in such a reply if appellee had inspected the draw bar, or had caused it to be inspected, and had found it broken, as he alleged in his declaration was the case; but he did nothing of the kind, nor did he examine, or have any other person examine to learn if a spring was weakened or broken, or a follower-plate was broken or gone. Nothing whatever is disclosed by plaintiff or his witnesses that shows appellant guilty of any negligence that contributed to the injury of appellee.

We adopt the language of Chief Justice Church in closing his opinion in the De Graff case, to wit:

"This accident was an unfortunate one, and the plaintiff received a severe injury in the service of the defendant without any apparent default of his, and while it is a case which should commend itself to the generosity of the employer, we think it can not be sustained without violating established principles of law."

The court erred in refusing to instruct the jury to find

the defendant not guilty, and for that error the judgment of the City Court of East St. Louis is reversed.

**Finding of Facts.**—We find that appellant is not guilty of any negligence that contributed to the injury of appellee, for which this suit was brought.